ADAMS, plaintiff in error, *agt.* THE PEOPLE, defendants in error.

### Questions discussed.

1. Whether a citizen, who was and always had been a resident of another state, was liable criminally for acts committed (obtaining money by false pretences) in and against the laws of this state, by his procurement, through innocent agents here?

The indictment in this case was found against Samuel Adams and Richard R. Seymour, for obtaining money of Suydam, Sage & Co., of the city of New-York, commission merchants, under false and fraudulent pretences. The first five counts of the indictment were framed upon the following receipt, and five drafts and acceptances given under it, amounting to $28,160 :—

"Received from Samuel Adams eighteen hundred and sixty barrels mess pork, two thousand six hundred barrels prime pork, six hundred and sixty barrels lard, (large size,) marked as per margin, in good order and conditioned, for and irrevocably subject to the order of Suydam, Sage & Co.; and I agree to forward and deliver the same with all reasonable diligence, as soon as navigation will permit, to the said Suydam, Sage & Co., in the

Marked A.

city of New-York, in the like good order and conditioned, (damages by fire and navigation excepted,) they paying for all charges and freight upon delivery thereof as is customary. Suydam, Sage & Co. hold the said property for sale on commission, and have a lien thereon not only for the subjoined draft against this property for $28,160, but also a general lien thereon for all other liabilities incurred or to be incurred by them for the said consignors.

"Dated, Chillicothe, 11th of January 1844.

"R. R. SEYMOUR."

The first draft and acceptance was as follows:—

"Chillicothe, Ohio.                        January 8th, 1844.
     No. 124.                                    $4,160.
"Six months after date, pay to the order of Samuel Adams four thousand one hundred and sixty dollars, value received, which place to acc't of
"To Suydam, Sage & Co., New-York.      SAMUEL ADAMS.
(Endorsed) Samuel Adams.   (Accepted) Suydam, Sage & Co."

The second draft was in all respects like the first, except that it was dated Jan. 9, 1844, for $6,000. The third was like the second, except the date, which was Jan. 10, 1844. The fourth was the same, except it was dated Jan. 11, 1844. And the fifth was the same, except the date, which was Jan. 12, 1844.

The sixth and seventh counts were upon a like receipt, signed by R. R. Seymour, for 1,300 barrels of mess pork, and 1,100 barrels prime pork—and three like drafts and acceptances given under it, amounting to $12,200.

The trial came on before the court of general sessions of the peace, in and for the city and county of New-York, on the 15th day of April, 1846. Hon. JOHN B. SCOTT, Recorder, and JOSEPH A. DIVVER and DAVID S. JACKSON, Aldermen. After the public prosecutor had rested, the prisoner moved for a dismissal on the grounds now appearing in the plea. The court refused thus to arrest the cause, but announced that the majority were of opinion that the tribunals of this state had no jurisdiction over the offender, and that they would so instruct the jury, the

sole judges of the law and fact. The public prosecutor, to secure the privilege of a writ of error, and the counsel for the prisoner, thereupon came to an agreement that the plea now on record be substituted. This plea is as follows:—

" And the said Samuel Adams, impleaded with Richard R. Seymour, defendant in this suit, in his own proper person comes here into court, protesting that he is not guilty of the offences alleged in the said indictment; nevertheless, for plea thereto, he says that he, the said defendant, was born in Ross county, in the state of Ohio, of parents then residing in and being citizens of the state of Ohio, and from the time of his birth until the time of the exhibiting of this plea, and for and during all the intermediate times, he was and has been, and still is a resident of and in the state of Ohio: that at the said several times when the supposed offences set forth in the several counts in the said indictment were as therein alleged committed, he was not, nor was he at any time prior thereto, in the said city, county, or state of New-York, nor within the territorial limits of the said state of New-York: that the said several writings called receipts and drafts, set forth in the said indictment, were all drawn, signed, and made in the said county of Ross, and while he, the said Samuel, was resident therein; and the said several receipts and drafts were by the said Samuel Adams presented in the city of New-York to the said persons so using the name, style and firm of Suydam, Sage & Co., through the instrumentality of innocent agents employed by the said Samuel Adams, while he, the said Samuel Adams, was and continued to be such resident of and personally within the said county of Ross, in the state of Ohio, aforesaid, and were in the said city of New-York presented to the said persons so using the name and firm of Suydam, Sage & Co., by the said Samuel Adams, through such innocent agents, and the said persons so using the name, style, and firm of Suydam, Sage & Co., then and there relying upon the truth of the same, were deceived and defrauded thereby. And the said several supposed offences in the said several counts of the said indictment

Adams *agt.* the People.

set forth, were committed by him, the said Samuel Adams, in the said city and county of New.York, by his causing and procuring the same to be done therein, as aforesaid, while he, the said Samuel Adams, was in the said county of Ross, in the state of Ohio aforesaid; wherefore he, the said Samuel Adams, ought not to be criminally questioned or proceeded against in the state of New-York, for the said acts and offences so done by him, and caused and procured to be done by him, as aforesaid, while he was so resident and being in the said county of Ross; and this the said Samuel Adams is ready to verify, &c.; therefore he prays judgment, &c."

To this plea there was a general demurrer put in by the public prosecutor, and joinder in demurrer by the defendant.

The supreme court on writ of error, July term, 1846, reversed the judgment of the general sessions, and found the indictment good—BEARDSLEY, Justice, delivering the opinion of the court. (*Reported* 3 *Denio*, 190.) Adams, the defendant, brought a writ of error, and removed the proceedings to this court.

*J. H. Raymond, Attorney and Counsel, and*
*George Wood, Counsel,* for plaintiff in error.

*First.* All objections to the form of the plea are waived, and it is intended to present under it the single question of the liability of a citizen of the state of Ohio to be presented for acts committed by his procurement against the laws of this state, while he was resident and being in such other state. The defendant is not precluded from contesting the facts charged in the indictment, if the decision of the court on the legal question presented by the demurrer should be found against him.

*Second.* The act alleged in the indictment to have been committed by S. Adams, and which is charged as a crime against the people of New-York in their sovereign capacity, was committed by him, as alleged, while he was in the state of Ohio, and out of the state and jurisdiction of the government of New-York.

*Third.* The said S. Adams, at the time he so committed said

Adams *agt.* the People.

act, resided in, and owed permanent allegiance to the state of Ohio; and at all times previous thereto, from and after the day of his birth, owed such allegiance to the government of Ohio; he having been born in the last-mentioned state, and having at all times previous to said act, from the day of his birth, resided in the said state of Ohio.

*Fourth.* The said S. Adams, at the time he so committed said act, owed no allegiance, either permanent or temporary, to the government of the state of New-York, and never had at any time previous thereto owed any such allegiance to said government of New-York. Because,

1. This being a proceeding against the person of the defendant, the government of New-York must have jurisdiction over his person.

2. Personal rights, by public international law, as well as by the codes of all modern civilized nations, are regarded as more important than the rights of property.

3. Not being a permanent citizen of New-York, there must be an actual residence, or presence in its territory, to create a temporary personal allegiance. Such allegiance cannot be created by construction or by fiction.

*Fifth.* Allegiance, or the obligation to obey the government of a country, is essential to subject a person to punishment for the violation of its public laws against crime, except in the case of piracy or other offences which are a violation of the public law of nations. (*The King* v. *Despardo*, 1*st Taunton*, 26.)

*Sixth.* Such allegiance is essential for the purpose aforesaid, whether the act done be a direct infringement of allegiance, or of a law which derives its sanction only from such allegiance, in which alone consists the obligation of the party to obey it.

*Seventh.* The said Samuel Adams, not owing any allegiance of any kind to the government of New-York, and being under no obligation of political or legal obedience to said government, at the time he so committed said act, was not, and is not, legally guilty by reason thereof, of any crime against the government of New-York, and was not, and is not, subject to any penalty which, by the laws of New-York, might be inflicted upon any

24

Adams *agt.* the People.

person or persons for the doing.of acts, owing at any time allegiance and political obedience, and subject to the jurisdiction of the last mentioned state. (*The State* v. *Knight, Taylor's North Carolina Reports*, 65.    *Ex parte Smith, Law Reporter, vol. vi, p.* 57.)

☞ Nothing done in North Carolina—all.in Virginia. ☜

*Eighth.* If any crime against the state of Ohio was committed by the said Samuel Adams, for having originated, and in fact committed the said act in the state of Ohio, though afterward consummated in New-York, he being as well at the origination as at the consummation thereof, and during the intermediate season resident in and owing allegiance to the said state of Ohio, he is not liable to be presented criminally therefor in the state of New-York, and by and under the laws of the last mentioned state. (*Folliott* v. *Ogden, 1st H. Blackstone,* 123 ; *Mostyn* v. *Fabingas, Cowp.* 161 ; *The King* v. *Alsop, 1st,* 33.)

*Ninth.* If the subject of a foreign state causes any injury to be done in another state, while he is in the territory of the former, his nation is responsible for the injury.

*Tenth.* An extra-territorial responsibility by an individual in his person to laws to which he owed no subjection, and to which he is a stranger, would be fraught with the most pernicious consequences to the personal rights of men.

*Eleventh.* There is nothing in the constitution, or laws, of the government of the United States which renders the said Samuel Adams responsible to the government of New-York, or punishable by its laws and judicial tribunals for the commission of the said act, while he was in the state of Ohio, as aforesaid.

And said act was not committed by him in violation of his duty to the government and laws of the United States.

☞ (Raymond.)  Must show that defendant was bound to support our laws.

Great question of allegiance not very fully met by supreme court.

Right to maintain personal actions is transitory, but not so of crimes.

Adams *agt.* the People.

Bound to obey laws, because he is a party to them—has an agency in making them.

Are several cases much in point .which were not noticed by Judge BEARDSLEY, though some of them were cited there. (1 *Taunton*, 26. Indict. for murder in China.)

Cannot reach the offender—is not a fugitive from justice. ☞☟

☞ (G. Wood, in reply.)—Man in New-Jersey with a gun kills one in this state, can be no punishment here. So if write a letter here influencing slaves in South Carolina, no punishment there.

2. Same doctrine between states of this union, must be allegiance, and cannot apply doctrine of fictions. Sovereignty of states—early opinions. (2 *Peters*, 586.) States foreign to each other, except as bound by Const. U. S.

Amendment Const. U. S. was intended to break down the contrary doctrine. (4 *Wash. C. C.* 371.)

Not a consolidated, but a confederated government.

The whole here is a question of state law. (3 *McLean*, 132–3.)

If guilty by fiction, then by fiction he fled from justice—may demand him as a fugitive as well as hold him guilty.

Allegiance—rule prescribed by a superior to an inferior, &c. Commanding implies a power to enforce.

Obedience lies at the foundation of all law; without it there is no law. Law is nugatory as to every man who does not owe obedience. (7 *Co. Calvin's case; Tomlin's L. D. Allegiance*.)

Is a wide difference between penal and other laws.

In civil suit here it is not necessary that any law of this state should have been violated.

But *crimes* otherwise. (*Story, Conf. of Laws,* ch. 16; also p. 32–3; 11 *Wheat.* 123; 7 *Cr.* 116; 3 *Story, Const.* 53; *Piracy*, 4 *Bl.* 71–73; 3 *Inst.* 112.)

Argument on the other side comes to this—may convict and punish here a man who owed no obedience to our laws. (*Story, Confl.* § 19, 20, 80.)

I admit was a violation of the law of this state. Series of acts beginning in Ohio, terminating in New-York. Act com-

Adams *agt.* the People.

mitted when series terminated.    Local allegiance do n't depend on municipal law, but great law of nations.—*Fictitious presence.*—Question under municipal law about place of trial.    No such thing in law of nations.

No case where Frenchman or Russian has been punished in England for act done in his own country.    No demand to deliver up.    (*Bacon Ab. Alien C.* 2; 3 *J. Ch. R.* 587; 10 *East.* 536.)

Where individual does an injury to another nation while at home, remedy is against *nation* of offender.

I admit that if a Frenchman send inflammatory papers into England, and cause them to be circulated there, will be a violation of English law; but cannot be punished criminally there, unless owe allegiance there.

In fiction of law he is personally present, but no fictitious or constructive presence where no allegiance.

These states sovereign and independent—same as England and France, except as modified . by the U. S. constitution. (7 *Co.* 13.)

I admit the crime was committed here, and nowhere else. I admit also, according to the common law doctrine, that though the defendant was not here, he is deemed to have been personally present.

John *McKeon*, *District Attorney and Counsel, and*
Ogden *Hoffman*, *Counsel* for defendants in error.

*First.* The crime for which the defendant stands indicted was committed at the place where it was consummated, and *the money obtained.*

1. The fraudulent pretence did its mischief, and the money was obtained within the city and county of New-York.

2. Supposing New-York and Ohio to be different counties of the same state or jurisdiction, the venue, it will not be denied, is in New-York.    (*Rex* v. *Batterby, B. & Ald.* 179; *Rex* v. *Coombs.* 1 *Leach Crown L.* 432, 388; *Esser's Case,* 1 *East P. C.* 125, 369; *Stark.* 5 *Crim. P.,* 25, 164; *U. S.* v. *Davis,* 2 *Sumner,* 485; *Foster's Crown Law,* 349; 1 *Hale, P. C.* 616; *Doug-*

Adams *agt.* the People.

*lass,* 235; 2 *T. R.* 238; 2 *B. & P.* 381; 21 *Wend.* 537; 1 *Chit. Cr. Law.* 190; 3 *B. & P.* 596.)

*Second.* The question of venue is not one of convenience, but of substance, viz., at what place was the crime committed? In determining venue the court determines jurisdiction. Venue establishes at what place the criminal was guilty, and as a consequence thereof, at what place he shall be tried, without reference to allegiance or to the place where the criminal actually was at the time the crime was committed. The broad principle being " *crimen trahit personam.*" (☞ 5 *D. & R.* 616; 3 *B. & C.* 706—cited with approbation ☞. *Rex* v. *Batterby,* 4 *B. & A.* 179; *Chit. Crim. Law, et sup.*)

The offence for which the prisoner is indicted is a felony, and the venue is absolute, single, and exclusive. (*Andrew* v. *Dieterich,* 14 *Wend.* 36; *English Cases, cited in Harrison's Digest, title* " *Crim. Law,*" *sub.* " *False Pretences;*" *Chit. Crim. Law, title,* " *Venue.*")

*Third.* When a crime is procured to be done by an *innocent agent,* the procurer is the principal and *the sole offender,* and in judgment of the law personally present at the time and place of the committing of the offence. *Qui facit per alium facit per se* is applicable as well to crime as to contracts, and constructive presence is a doctrine well known in criminal law. (*Rex* v. *Munton,* 1 *Esp.* 62; *Barkhampsted* v. *Parsons,* 3 *Connt.* 1; *Rathbun's Case,* 21 *Wend.* 509; *King* v. *Brissac,* 4 *East.* 164; *Hill's Case,* 11 *Mass.* 136; *Rex* v. *Michaels,* 9 *Car. & P.* 356; *Rex* v. *Lewis,* 6 *Car. & P.* 161; 1 *Chit. Crim. Law,* 191, *and cases cited.*)

*Fourth.* No different or additional question arises, although the offender may be the citizen of a foreign state. The doctrine of constructive presence knows of no such exception. The principle, " *crimen trahit personam,*" applies whether the offender be out of the state or out of the county. " He will not be allowed," in the language of Judge Cowen, " to gainsay the fact that he was present." (*Rathbun's Case,* 21 *Wend.* 509; *Barkhampsted* v. *Parsons,* 3 *Connt.* 1; *Harvey's Case,* 8 *Am. Jurist,* 69; *Gillespie's Case,* 7 *Serg. & Rawle,*

Adams *agt.* the People.

478; *McLeod's Case,* 1 *Hill,* 406–7; 3 *McLean. R.* 120; *Rawle Const.* 100.)

*Fifth.* Allegiance is the duty which a subject owes his lord or government. The duty of allegiance is not essential to create amenability to criminal law, nor need it be shown except in cases in which the breach of allegiance is the essence of or an ingredient in the offence. And the averments in such indictments vary essentially from indictments on common law felonies. (5 *St. Trial,* 462, *Howell; Foster's Crown Law,* 188, discourse upon high treason; *Rex* v. *Johnson,* 6 *East.* 590; *S. C.* 7 *East.; McLeod's Case,* 1 *Hill; Gillespie's Case,* 7 *Serg. & Rawle,* 478; *Harvey's Case,* 8 *Am. Jurist,* 69; *Fisher's Case,* 1 *Stuart, Canada R.* 245; *Nune* v. *Keye,* 4 *Taunt.* 34.)

*Sixth.* The rule that " Criminal laws shall not have extra territorial effect," does not mean that such laws shall not affect foreigners owing no allegiance natural or temporary, who have committed crimes within and against this state. But simply that courts will not execute within their own jurisdiction the criminal laws of a foreign jurisdiction. So all the cases will be found. (Such was *Scoville* v. *Canfield,* 14, *J. R.* 338; *Common.* v. *Green,* 17 *Mass.* 515.)

*Seventh.* Ignorance, on the part of the defendant, of the laws of our state, will not be implied, and would be no defence. (*Rex* v. *Esop, Car. & P.* 456.)

Besides, the *stat.* 33 *Hen.* 8, *ch.* 1, was a part of the common law of the land, brought here at the time of the emigration of our ancestors. (1 *Kent Com.* 472, *notes a and b, ed.* 1840; *Carwood* v. *State of Alabama,* 1 *Stev. & Port.* 327, *and cases cited.*)

This particular statute has been declared to be part of the common law of Massachusetts. (*Com.* v. *Hanen,* 6 *Mass.* 72.)

However modified by statute, it is part of the common law Cheat—*a crimen falsi*—known to every man's conscience to be an immoral and criminal act—for which all courts will hold a man amenable when found at any time, or in any way, within their jurisdiction.

*Eighth.* We have hitherto considered the case as if Ohio

and New-York bore no other relation to each other than England and France. But the federal constitution makes the citizens of each state entitled to all privileges and immunities of citizens in the several states. (*U. S. Const., art.* 4, *sec.* 2.)

It is not necessary for the court to consider the duty of the executive in such cases, or whether he would be bound to deliver up as a fugitive. The court now finds the prisoner within its jurisdiction.

☞ (McKeon.) — Allegiance only in question when the charge is treason. Pirates taken on the high seas are punished, though they owe no allegiance. Protection to society is the object of the criminal law. ☜

☞ (Ogden Hoffman, same side.) — Where the crime is committed there the criminal is answerable. It is said cases cited were upon the mere question of venue. In criminal cases venue is matter of substance. Admitted a man may be in a county where he never was, if the crime was there. Another *state* does not alter the principle.

Allegiance is a different thing from a duty to obey the laws and liability to punishment.

If any allegiance here as exists elsewhere, it would be to the government of the U. S.

No case holds that allegiance is necessary to jurisdiction. (1 *Esp.* 62; 6 *East*, 602; 7 *East*, 65, *S. C.*) In 6 *East*, attorney general cites a case in point on *hab. corp.* (21 *W.*; 2 *Sumner*, 485.)

Allegiance nothing to do with the question, when crime is against statute or common law. Only comes in in treason or when it gives greater enormity to crime.

Allegiance may give jurisdiction over crimes committed abroad, but want of it cannot deprive of jurisdiction where the offence was committed. (1 *Taunt.* 25; 7 *Cranch*, 139; 25 *Wend.* 601; 3 *Connt.* 5.)

Court of the United States gives the defendant all the privileges of a citizen of this state. Here the offence is *malum in se*. Defendant knew he was violating laws of God and man. ☜

Coddington *agt.* Davis and others.

DECISION.—Judgment affirmed unanimously.

NOTE.—GARDINER, J., delivered the opinion of the court, in which BRONSON, J., concurred, by stating the conclusions at which he arrived.

*Held,* that the defendant may be rightfully punished. He had violated a law to which he owed obedience, for it was written' upon his own conscience, and obligatory everywhere. To that law the statute of this state has affixed a penalty, to be enforced in her own tribunals for the protection of her own citizens.

The immunity he enjoyed at home from arrest and punishment was not due to him as a criminal, or as a citizen of Ohio, but because he had injured no one whom that state was bound to protect, and because the inviolability of its territory was an essential to its sovereignty and independence. The prisoner knew that, through his agent, he was defrauding those who were entitled to the protection of our laws, and he cannot be permitted to say that he did not know that it was unlawful to cheat in New-York as well as in Ohio. (*Per* GARDINER, J.)

Also *held,* that it was not a matter of any importance whether the defendant owed allegiance to this state or not. But two cases where the question of allegiance can have anything to do with a criminal prosecution: 1st, Treason; 2d, Where the government proposes to punish offences committed by its own citizens beyond the territorial limits of the state. When the offence, not being treason, is committed within this state, the question of allegiance nothing to do with the matter.

Jurisdiction of the offence, or subject matter, and jurisdiction to try the offender, are very different things. The first exists whenever the offence was committed within this state; and the second, when the offender is brought into court, and not before. And this is so whether he be a citizen or not. (*Per* BRONSON, J.)

*Reported* 1 *Comstock,* 173.